**Slip Op. 12-23**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| SGL CARBON LLC and SUPERIOR GRAPHITE CO., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| FUSHUN JINLY PETROCHEMICAL CARBON CO., LTD., ET AL., | : | |
| Defendant-Intervenors. | : | Consol. Court No. 11-00389 |
| FUSHUN JINLY PETROCHEMICAL CARBON CO., LTD., ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| SGL CARBON LLC and SUPERIOR GRAPHITE CO., | : | |
| Defendant-Intervenors. | : | |

[Motion for reconsideration granted; U.S. Department of Commerce granted leave to publish amended final results correcting ministerial errors]

Dated:  February 22, 2012

David A. Hartquist, R. Alan Luberda, and Mary T. Staley, Kelley Drye & Warren LLP, of Washington, D.C., for Plaintiffs SGL Carbon LLC and Superior Graphite Co.

Melissa M. Devine, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.  With her on the brief were Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director, Commercial Litigation Branch.  Of counsel on the brief was Daniel J. Calhoun, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

Lizbeth R. Levinson and Ronald M. Wisla, Kutak Rock LLP, of Washington, D.C., for Defendant-Intervenors Fushun Jinly Petrochemical Carbon Co., Ltd., Beijing Fangda Carbon Tech Co., Ltd., Fushun Carbon Co., Ltd., Fangda Carbon New Material Co., Ltd., Chengdu Rongguang Carbon Co., Ltd., and Hefei Carbon Co., Ltd.

# OPINION

RIDGWAY, Judge:

In this consolidated action, the U.S. Department of Commerce's Final Results in the first

administrative review of the antidumping duty order on small diameter graphite electrodes from the

People's Republic of China are under assault from both directions.  *See generally* Small Diameter

Graphite Electrodes from the People's Republic of China: Final Results of the First Administrative

Review of the Antidumping Duty Order and Final Rescission of the Administrative Review, in Part,

76 Fed. Reg. 56,397 (Sept. 13, 2011) ("Final Results").[1]

---

[1]According to the Commerce Department, the electrodes covered by the antidumping duty order at issue are typically used in "primary melting, ladle metallurgy, and specialty furnace applications in industries including foundries, smelters, and steel refining operations."  *See* Small Diameter Graphite Electrodes From the People's Republic of China: Preliminary Results of the First Administrative Review of the Antidumping Duty Order; Partial Rescission of Administrative Review; and Intent To Rescind Administrative Review, in Part, 76 Fed. Reg. 12,325, 12,326 (March 7, 2011) ("Preliminary Results").

Two domestic producers of electrodes – SGL Carbon LLC and Superior Graphite Co.

("Domestic Producers") – commenced Court No. 11-00389, asserting that the Final Results

understate the extent of the dumping by Fushun Jinly Petrochemical Carbon Co., Ltd. ("Fushun

Jinly") and the "Fangda Group" companies (including Beijing Fangda Carbon Tech Co., Ltd.,

Fushun Carbon Co., Ltd., Fangda Carbon New Material Co., Ltd., Chengdu Rongguang Carbon Co.,

Ltd., and Hefei Carbon Co., Ltd.), among others.  On the other side, Fushun Jinly and the Fangda

Group brought Court No. 11-00407, challenging the dumping margins reflected in the Final Results

as overstated.

Pending before Commerce at the time the Domestic Producers commenced their action were

comments from Fushun Jinly, the Fangda Group, and Xinghe County Muzi Carbon Co., Ltd.

("Muzi")[2] requesting that the agency correct certain alleged "ministerial errors" in the Final Results.

The Government sought leave of the Court to permit Commerce to correct some of those alleged

ministerial errors – a motion that was opposed by the Domestic Producers, and denied in a brief

order stating no reasons for the decision.  *See* Order (Oct. 26, 2011).  Thereafter, Fushun Jinly and

the Fangda Group intervened in the Domestic Producers' action, and the case was assigned to these

chambers.  In addition, as noted above, Fushun Jinly and the Fangda Group initiated their own action

(Court No. 11-00407), which was then consolidated with the Domestic Producers' action.

Now before the Court is a Motion for Reconsideration filed by Fushun Jinly and the Fangda

Group, neither of which were parties to the Domestic Producers' action at the time the

Government's original motion for leave to correct ministerial errors was denied.  *See* Defendant

---

[2]Muzi is a separate rate company that was not selected for individual examination in the administrative review at issue here.

Intervenors' Motion for Reconsideration of the Court's Order Dated October 26, 2011 Denying

Defendant's Motion for Leave to Publish Amended Final Results Correcting Ministerial Errors

("Def.-Ints.' Motion for Reconsideration").

The Government supports the Motion for Reconsideration, and, indeed, renews its own

motion seeking leave to publish amended final results correcting the specified alleged ministerial

errors. *See* Defendant's Response to Defendant-Intervenors' Motion for Reconsideration at 12

("Def.'s Renewed Motion for Correction of Ministerial Errors").   In contrast, the Domestic

Producers oppose the Motion for Reconsideration, asserting that Commerce should not now be

permitted to make the corrections. *See* Plaintiffs' Opposition to Defendant-Intervenors' Motion for

Reconsideration of the Court's Order Denying Defendant Leave to Publish Amended Final Results

Correcting a Ministerial Error ("Pls.' Opposition to Motion for Reconsideration").

For the reasons outlined below, the Motion for Reconsideration must be granted, and

Commerce permitted to publish amended final results correcting the specified ministerial errors.

## I. Background

Commerce's correction of ministerial errors in agency determinations is expressly authorized

both by statute and by regulation. *See generally* 19 U.S.C. § 1675(h) (2006); 19 C.F.R. § 351.224

(2008).[3]  The legislative history underscores the *raison d'etre* for the ministerial errors statute and

regulation, emphasizing Congress' desire to have Commerce correct such errors in order to preempt

needless litigation and thereby promote judicial economy:

---

[3]All statutory citations herein are to the 2006 edition of the United States Code, and all citations to regulations are to the 2008 edition of the Code of Federal Regulations.

> It has come to the Committee's attention that certain final determinations contain clerical and other errors which are not corrected, under current procedures, unless the parties to the proceedings resort to judicial review of the final determination. *The result is expensive litigation that unnecessarily burdens the court system, in order to correct essentially unintended errors.* Therefore, the Committee has adopted this provision to allow for the correction of ministerial errors in final determinations within a limited time period after their issuance.

H.R. Rep. No. 100-40, Pt. 1, at 144 (1987) (emphasis added); *see generally* <u>NTN Bearing Corp. v. United States</u>, 74 F.3d 1204, 1207 (Fed. Cir. 1995) (discussing legislative history of statutory provision concerning correction of ministerial errors).

To that end, Congress directed Commerce to establish procedures for the agency's correction of "ministerial errors" in final determinations "within a reasonable time after the determinations are issued." *See* 19 U.S.C. § 1675(h). As defined by statute, "ministerial errors" include "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which [Commerce] considers ministerial." *See id.*; *see also* 19 C.F.R. § 351.224(f) (defining "ministerial error" in language virtually identical to that of the statute).

The statute requires that Commerce "ensure opportunity for interested parties to present their views regarding any such [ministerial] errors." *See* 19 U.S.C. § 1675(h). Commerce's regulation thus provides, in sum and substance, that, in cases such as this, any allegations of ministerial errors in a final determination are to be filed with Commerce within five days after the agency discloses the calculations underpinning the agency's determination, and that "[r]eplies to comments . . . must be filed within five days after the date on which the comments were filed." *See* 19 C.F.R. §§ 351.224(b), 351.224(c)(1)-(3). The regulation further provides that Commerce "will

analyze any comments received and, if appropriate, . . . correct any ministerial error by amending . . . the final results of review."  *See* 19 C.F.R. § 351.224(e).

The Final Results at issue here were published in the Federal Register on September 13, 2011.  *See Small Diameter Graphite Electrodes from the People's Republic of China: Final Results of the First Administrative Review of the Antidumping Duty Order and Final Rescission of the Administrative Review, in Part,* 76 Fed. Reg. 56,397 (Sept. 13, 2011) ("Final Results").  Thereafter, Fushun Jinly, the Fangda Group, and Muzi each submitted timely comments to Commerce alleging various ministerial errors in the Final Results.  *See* Letter from Fushun Jinly to Commerce (Sept. 19, 2011); Letter from Fangda Group to Commerce (Sept. 19, 2011); Letter from Muzi to Commerce (Sept. 19, 2011).  Four days later, the Domestic Producers submitted comments to Commerce objecting to correction of some of the alleged errors.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011).

Before Commerce could publish amended Final Results addressing the alleged ministerial errors, the Domestic Producers filed their summons and complaint challenging the Final Results.  *See* Domestic Producers' Summons (Sept. 28, 2011); Domestic Producers' Complaint (Sept. 28, 2011).[4]  The commencement of the Domestic Producers' action vested the court with jurisdiction over the administrative proceeding in this case, precluding Commerce from correcting any

---

[4]The Domestic Producers emphasize that, in issuing the Final Results in this case, Commerce stated that it intended to issue liquidation instructions to Customs "15 days after the publication date of the final results of these reviews."  *See* Final Results, 76 Fed. Reg. at 56,400 (*quoted in* Pls.' Opposition to Motion for Reconsideration at 5 n.1).  Because the issuance of such instructions allows Customs to liquidate entries, parties to the administrative review generally must file a summons and complaint, and obtain a preliminary injunction to enjoin liquidation, in order to preserve their right to judicial review.

ministerial errors absent leave of court.  *See* <u>Zenith Elecs. Corp. v. United States</u>, 884 F.2d 556, 560-

62 (Fed. Cir. 1989) (explaining that "once [the Court of International Trade's] exclusive jurisdiction

has been invoked, Commerce may correct clerical errors [in an agency determination] only with the

court's prior authorization").

Accordingly, on October 6, 2011, the Government filed a Motion for Correction of

Ministerial Errors.  *See* Defendant's Motion for Leave to Publish Amended Final Results Correcting

A Ministerial Error ("Def.'s Motion for Correction of Ministerial Errors").   In its motion, the

Government stated that Commerce had reviewed the allegations of ministerial error, as well as the

Domestic Producers' comments thereon, and that the agency had determined that the Final Results

should be amended to correct certain of the alleged errors in accordance with the "ministerial errors"

statute and regulation.  *See id*. at 2.

Specifically, the Government's Motion for Correction of Ministerial Errors explained that

Commerce intended to correct two of the three errors alleged by Fushun Jinly – (1) the unintentional

miscalculation of Fushun Jinly's selling, general, and administrative ("SG&A") ratio, and (2) the

unintentional miscalculation of Fushun Jinly's profit ratio.  *See* Def.'s Motion for Correction of

Ministerial Errors at 2.[5]   Similarly, the Government's motion explained that, of the three errors

alleged by the Fangda Group, Commerce intended to correct one – the inadvertent application of a

freight surrogate value measured in metric tons to the Fangda Group's packing factors of production

---

[5]The Government's Motion for Correction of Ministerial Errors thus implicitly indicated that Commerce rejected Fushun Jinly's claim that the agency's application of partial adverse facts available to Toller # 2 (Liaoning Fuan) was a ministerial error subject to administrative correction. *Compare* Letter from Fushun Jinly to Commerce (Sept. 19, 2011) at 3-6 *and* Def.'s Motion for Correction of Ministerial Errors at 2.

(which were measured in kilograms).  *See id.*[6]  In addition, the Government's motion explained that Commerce intended to correct the spelling of Muzi's company name in the margin chart in the Final Results.  *See id.*  The Government's motion noted that the specified corrections would affect the margin calculations for Fushun Jinly and the Fangda Group.  *See id.*  The Government further noted that the corrections would also affect the rate for Muzi (the non-selected separate rate respondent), because Muzi's rate is based on the weighted-average of the rates of the respondents that were selected for individual examination (*i.e.*, Fushun Jinly and the Fangda Group).  *See id.*

In the Domestic Producers' September 23, 2011 comments submitted to Commerce concerning the allegations of ministerial error filed by Fushun Jinly and the Fangda Group, the Domestic Producers had opposed only one of the four corrections that Commerce ultimately proposed to make.  *See* Letter from Domestic Producers (Sept. 23, 2011) (expressing no objection to correction of Fushun Jinly's SG&A and profit ratios, and expressing no objection to correction of the spelling of Muzi's company name; objecting to correction of Fangda Group's freight surrogate value (where Commerce applied a freight surrogate value measured in *metric tons* to packing factors of production which were measured in *kilograms*)).  But the Domestic Producers took a very different tack when the Government sought leave of court to allow Commerce to make

_____

[6]As such, the Government's Motion for Correction of Ministerial Errors implicitly indicated that Commerce rejected the Fangda Group's claim that Commerce's treatment of graphitized metallurgical coke scrap as a material input (rather than a by-product) was a  ministerial error subject to administrative correction.  *Compare* Letter from Fangda Group to Commerce (Sept. 19, 2011) at 2 *and* Def.'s Motion for Correction of Ministerial Errors at 2.  Likewise, the Government's motion indicated that Commerce also implicitly rejected the Fangda Group's claim concerning Commerce's treatment of certain costs incurred by one of the Group's tollers, Fushun Fuxin. *Compare* Letter from Fangda Group to Commerce (Sept. 19, 2011) at 4-5 *and* Def.'s Motion for Correction of Ministerial Errors at 2.

certain proposed corrections.  In response to the Government's motion, the Domestic Producers objected broadly to Commerce's correction of any ministerial errors, asserting that the motion should be denied outright.  *See* Plaintiffs' Opposition to Defendant's Motion for Leave to Publish Amended Final Results Correcting a Ministerial Error at 7 (Oct. 25, 2011) ("Pls.' Opposition to Def.'s Motion for Correction of Ministerial Errors") (urging the court to "deny the Defendant's Motion . . . in its entirety").[7]

Because Fushun Jinly and the Fangda Group had not yet intervened in the Domestic Producers' action, the court did not have the benefit of their views in ruling on the Government's original Motion for Correction of Ministerial Errors.  Nor did the court have before it the comments that Fushun Jinly and the Fangda Group had filed with Commerce alleging ministerial error and the Domestic Producers' response thereto, which would have made it clear to the court that the Domestic Producers had not previously objected to three of the four ministerial errors that were the subject of the Government's motion – a critical fact that the Domestic Producers failed to disclose.[8]

---

[7]In essence, the Domestic Producers opposed the Government's Motion for Correction of Ministerial Errors on four grounds.  Specifically, the Domestic Producers argued that the Government's motion was "vague and unclear," that Commerce's inability to make the corrections at issue without leave of court was attributable to the agency's policy of issuing liquidation instructions to Customs within 15 days of the publication of final results (necessitating parties' swift commencement of any court action challenging final results), that the Government's motion did not address the Domestic Producers' claim that the corrections could have been identified and addressed at the preliminary results stage of the administrative review, and that Commerce would suffer no hardship as a result of a denial of the Government's motion.  *See generally* Pls.' Opposition to Def.'s Motion for Correction of Ministerial Errors at 4-7.

[8]Not only did the Domestic Producers' brief in opposition to the Government's Motion for Correction of Ministerial Errors fail to disclose that the Domestic Producers had not previously objected to three of the four ministerial errors at issue, but the Domestic Producers went so far as to affirmatively assert that they had argued to Commerce that each of the four alleged errors could, and should, have been raised in the Chinese producers/exporters' case briefs filed with Commerce

In an order of one-and-one-half pages, entered before the case was assigned to a judge, the Government's Motion for Correction of Ministerial Errors was denied.  *See* Order (Oct. 26, 2011).  The order stated no reasons for the decision, and, in particular, did not address either the underlying purpose of the statutory and regulatory framework specifically designed to permit Commerce's correction of ministerial errors (and thus streamline judicial review) or the substantial body of case law interpreting and applying the ministerial errors statute and the regulation.  *See id.*  Nor did the order address the fact that the Domestic Producers' comments to Commerce had made no objection to three of the four corrections that Commerce proposed to make.  *See id.*

In early November 2011, Fushun Jinly and the Fangda Group were granted leave to intervene in the Domestic Producers' action, and, thereafter, the case was assigned to these chambers.  In the meantime, Fushun Jinly and the Fangda Group initiated their own action (Court No. 11-00407), including in their complaint as causes of action all six of the issues raised in the allegations of ministerial error that they filed with Commerce immediately following publication of the Final Results.  *See* Fushun Jinly/Fangda Group Complaint (Nov. 9, 2011), Counts 1-5.  The action commenced by Fushun Jinly and the Fangda Group was subsequently consolidated with the

---

following the issuance of the Preliminary Results.  *See* Pls.' Opposition to Def.'s Motion for Correction of Ministerial Errors at 6 (criticizing the Government for not addressing the alleged "specific claim made by [the Domestic Producers] . . . that the [Chinese producers/exporters] should have identified and raised the[] errors in [their] case brief and thus failed to exhaust their administrative remedies").  In fact, however, the Domestic Producers had raised an "exhaustion" objection to the correction of only one of the four ministerial errors at issue; and, as noted above, they had raised no objections whatsoever to the correction of the other three ministerial errors in question.  *See* Letter from Domestic Producers (Sept. 23, 2011) (expressing no objection to correction of Fushun Jinly's SG&A and profit ratios, and expressing no objection to correction of the spelling of Muzi's company name; objecting to correction of Fangda Group's freight surrogate value).

Domestic Producers' action.  *See* Order (Dec. 2, 2011).

Fushun Jinly and the Fangda Group now seek reconsideration of the October 26, 2011 order denying the Government's original Motion for Correction of Ministerial Errors.  *See* Defendant Intervenors' Motion for Reconsideration of the Court's Order Dated October 26, 2011 Denying Defendant's Motion for Leave to Publish Amended Final Results Correcting Ministerial Errors ("Def.-Ints.' Motion for Reconsideration").   The Government supports the Motion for Reconsideration, and takes the occasion to renew its own original Motion.  *See* Defendant's Response to Defendant-Intervenors' Motion for Reconsideration at 12 ("Def.'s Renewed Motion for Correction of Ministerial Errors") (requesting that Court "treat [the Government's response to the Motion for Reconsideration] as a renewed motion [for leave to correct ministerial errors] . . . if appropriate").  The Domestic Producers argue that the Motion for Reconsideration should be denied. *See* Plaintiffs' Opposition to Defendant-Intervenors' Motion for Reconsideration of the Court's Order Denying Defendant Leave to Publish Amended Final Results Correcting a Ministerial Error ("Pls.' Opposition to Motion for Reconsideration").

## II.  Analysis

As outlined in greater detail below, notwithstanding the Domestic Producers' claims to the contrary, the four errors that Commerce here proposes to correct in amended final results are all clearly "ministerial."   Further, where errors in final results are determined to be "ministerial" in nature, courts typically grant Commerce leave to publish amended final results correcting the errors, unless such action would result in prejudice or fundamental unfairness to a party.  In the case at bar, the Domestic Producers cannot make such a showing.

As discussed below, permitting Commerce to publish amended final results correcting the ministerial errors at issue will not result in any cognizable prejudice or fundamental unfairness to the Domestic Producers.  Indeed, permitting Commerce to publish amended final results will prevent the perpetuation of prejudice and unfairness to the Chinese producers/exporters, and, moreover, will promote judicial economy, will conserve the resources of the parties and the Court, and will ensure that the agency determination that is subject to judicial review in this proceeding is that which Commerce intended, and thus will be consonant with Congress' express intent as reflected in the statutory provision governing the correction of ministerial errors.

For all these reasons, the Motion for Reconsideration filed by Fushun Jinly and the Fangda Group, as well as the Government's Renewed Motion for Correction of Ministerial Errors, must be granted, and Commerce must be granted leave to publish amended final results correcting the four ministerial errors at issue.

## A.  The "Ministerial" Nature of the Errors

As a threshold matter, the Domestic Producers' Opposition to the Motion for Reconsideration argues that the Government's original Motion for Correction of Ministerial Errors "failed to provide clear guidance on how [Commerce] intended to address" the ministerial errors that Commerce proposes to correct.  *See generally* Pls.' Opposition to Motion for Reconsideration at 4-5.[9]  The Domestic Producers now contend that they therefore cannot ascertain whether the errors at

---

[9]*But see* <u>Shinhan Diamond Indus. Co. v. United States</u>, 34 CIT ____, ____, 2010 WL 850169 at * 5 (2010) (rejecting argument that error is not "ministerial," where argument "is more accurately characterized as a disagreement with the manner in which [Commerce] chose to correct the error"; explaining that means of correcting error "goes to the merits" of Commerce's determination, and that – in determining whether to grant Commerce leave to correct a ministerial error, "[t]he only

issue are in fact "actually ministerial, rather than substantive." *See id.* at 4; *see generally id.* at 3-5.[10]

The Domestic Producers' argument has a very hollow ring. The comments that the Domestic Producers filed with Commerce concerning the Chinese producers/exporters' allegations of ministerial error expressed no such concern as to any of the alleged errors. *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011). To the contrary, the Domestic Producers' comments to Commerce addressed the allegations of ministerial error squarely on the merits. *See id.* As such, the Domestic Producers obviously found the descriptions of the alleged errors that Fushun Jinly, the Fangda Group, and Muzi provided to be "detailed enough to provide substantive comments in response." *See* Def.'s Renewed Motion for Correction of Ministerial Errors at 11; *see also* Letter from Fushun Jinly to Commerce (Sept. 19, 2011); Letter from Fangda Group to

---

question at issue . . . is whether the [alleged error] was an unintentional, ministerial error"); <u>Diamond Sawblades Mfgrs. Coalition v. United States</u>, 34 CIT ____, ____, 2010 WL 850158 at * 5 (2010) (same).

[10]As discussed above, the Domestic Producers' position on the "ministerial" nature of the errors has changed over time. Indeed, the Domestic Producers' exact position is difficult to pin down, even within their most recent brief.

In the caption for the relevant subsection of their Opposition to the Motion for Reconsideration, the Domestic Producers make the affirmative statement that the errors that Commerce proposes to correct are not "[s]imply [m]inisterial." *See* Pls.' Opposition to Motion for Reconsideration at 3. At the top of the following page, however, the Domestic Producers' position is watered down. The Domestic Producers state merely that they "*do not concede* that the errors alleged . . . are ministerial mistakes." *See id.* at 4 (emphasis added). And, in the following paragraph, the Domestic Producers argue that the subject errors have not yet been identified "in a way that would allow [the Domestic Producers] . . . to determine whether the errors were . . . actually ministerial." *See id.*

Thus, when push comes to shove, the Domestic Producers even now do not affirmatively assert that the errors that Commerce seeks to correct *are not* ministerial. Rather, the Domestic Producers simply decline to concede the point. The Domestic Producers' concerns come too late, however; and, in any event, they are unfounded.

Commerce (Sept. 19, 2011); Letter from Muzi to Commerce (Sept. 19, 2011).[11]  The Domestic

Producers' argument thus cannot carry the day.

      Commerce is entitled to "substantial discretion in determining what types of unintentional

or inadvertent errors qualify . . . [as] 'ministerial.'"  *See* Kaiyuan Group Corp. v. United States, 28

CIT 698, 723, 343 F. Supp. 2d 1289, 1312 (2004) (*citing* Shandong Huarong Gen. Corp. v. United

States, 25 CIT 834, 847-48, 159 F. Supp. 2d 714, 727-28 (2001), *aff'd*, 60 Fed. Appx. 797 (Fed. Cir.

2003); CEMEX, S.A. v. United States, 19 CIT 587, 593 (1995), *aff'd*, 133 F.3d 897 (Fed. Cir.

1998)).  Close analysis of the record discloses nothing to cast doubt on Commerce's determination

here, rendered in the exercise of that "substantial discretion."

      As noted in section I above, the Government's original Motion for Correction of Ministerial

Errors explained that Commerce proposes to correct (1) the unintentional miscalculation of Fushun

Jinly's selling, general, and administrative ("SG&A") ratio; (2) the unintentional miscalculation of

Fushun Jinly's profit ratio; (3) the inadvertent application of a freight surrogate value measured in

metric tons to the Fangda Group's packing factors of production (which were measured in

---

      [11]*See generally* NTN Corp. v. United States, 32 CIT ____, ____, 587 F. Supp. 2d 1313, 1317-18 (2008) (rejecting objecting party's argument that it "cannot properly assess any suggested correction and that the court . . . cannot assess whether the ministerial error has occurred (even though [the parties] acknowledge that it has), whether the correction is appropriate, or whether the form of the correction will truly be ministerial"; emphasizing that "[c]ontrary to the premise of this argument, the court need not decide the merits of the . . . issue to rule on [the motion for leave to correct a ministerial error]," and the objecting party "need not assess the merits of [the] issue at this time because it will have the opportunity to do so after amended final results are published and the administrative record is supplemented as necessary.  The merits of the issue may be litigated along with the other issues presented for judicial review."); *see also* Federal-Mogul Corp. v. United States, 16 CIT 975, 982-83, 809 F. Supp. 105, 111-12 (1992) (dismissing argument that Commerce "ha[d] not sufficiently described the alleged ministerial errors or explained exactly how [Commerce] propose[d] to fix those errors").

kilograms); and (4) the misspelling of Muzi's company name in the margin chart in the Final

Results.  *See* Def.'s Motion for Correction of Ministerial Errors at 2.  It is clear beyond cavil that

these errors fall within the statutory and regulatory definition of "ministerial" errors, because they

constitute "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from

inaccurate copying, duplication, or the like, and any other type of unintentional error which

[Commerce] considers ministerial."  *See* 19 U.S.C. § 1675(h); 19 C.F.R. § 351.224(f).

As the Court of Appeals has explained, ministerial errors "are by their nature not errors in

judgment but merely inadvertencies."  *See* NTN Bearing Corp., 74 F.3d at 1208.  Errors within the

scope of the statute and regulation thus include "errors mechanical in nature, . . . and not involving

an error of substantive judgment" or "mindless and mechanistic mistakes [and] minor shifting of

facts."  Shinhan Diamond Indus. Co. v. United States, 34 CIT ____, ____, 2010 WL 850169 at * 4

(2010).

In particular, ministerial errors include those that merely require Commerce to

"mathematically adjust a particular rate."  *See* Mazak Corp. v. United States, 33 CIT ____, ____,

659 F. Supp. 2d 1352, 1362 (2009).  Ministerial errors also include calculations involving "quantity

and value variables that were stated in inconsistent units of measure."  *See* Hyundai Elecs. Industries

Co. v. United States, 29 CIT 981, 992, 395 F. Supp. 2d 1231, 1243 (2005); *see also* Aramide

Maatschappij V.o.F. v. United States, 19 CIT 1094, 1102, 901 F. Supp. 353, 361 (1995) (holding

that Commerce made "ministerial" error when agency failed to convert German marks and Japanese

yen into Dutch guilders in Dutch-guilder denominated calculation); Federal-Mogul Corp. v. United

States, 16 CIT 975, 978-79, 809 F. Supp. 105, 109-10 (1992) (holding that Commerce's failures to

convert certain data from yen to dollars constituted "ministerial" errors).

In the case at bar, Commerce acknowledges that it made an unintentional arithmetic error in calculating the SG&A and profit ratios for Fushun Jinly. *See* Def.'s Motion for Correction of Ministerial Errors at 2; Def.'s Renewed Motion for Correction of Ministerial Errors at 3, 6, 8. Commerce further admits that it made an inadvertent error in its freight surrogate value calculation for the Fangda Group, because it mistakenly performed packing material cost calculations on a metric ton basis even though the Fangda Group reported its packing factors of production in units of kilograms. *See* Def.'s Motion for Correction of Ministerial Errors at 2; Def.'s Renewed Motion for Correction of Ministerial Errors at 3, 6, 8. In addition, Commerce concedes that it misspelled Muzi's corporate name in its Final Results. *See* Def.'s Motion for Correction of Ministerial Errors at 2; Def.'s Renewed Motion for Correction of Ministerial Errors at 3, 6, 8.

In taking the actions outlined above, Commerce simply "'made . . . error[s], not resulting from ill-considered judgment or wayward discretion, but from oversight.'" *See* <u>Geneva Steel v. United States</u>, 20 CIT 7, 60, 914 F. Supp. 563, 608 (1996) (citation omitted). The errors at issue are therefore purely "ministerial."

### B. The Domestic Producers' Allegations of Potential Prejudice

Where errors in final results are determined to be "ministerial" in nature, the statutory and regulatory framework expressly contemplates Commerce's correction of those errors through administrative process, rather than through the process of judicial review. *See generally* 19 U.S.C. § 1675(h); 19 C.F.R. § 351.224(c)-(g). Where – as here – a court is already seized with jurisdiction, the appropriate course generally is to grant the agency leave to publish amended final results

correcting the ministerial errors.  *See generally* American Signature, Inc. v. United States, 598 F.3d 816, 825 (Fed. Cir. 2010)  (acknowledging that "[t]he Court of International Trade has routinely exercised jurisdiction . . . to consider . . . requests to correct ministerial errors in assessment rates").

The sole exception to this general rule may be where the publication of amended final results would result in prejudice or fundamental unfairness to a party.  *See generally* Shinhan Diamond, 34 CIT at ____, 2010 WL 850169 at * 4; Diamond Sawblades Mfgrs. Coalition v. United States, 34 CIT ____, ____, 2010 WL 850158 at * 4 (2010); NTN Corp. v. United States, 32 CIT ____, ____, 587 F. Supp. 2d 1313, 1316 (2008).  The burden of demonstrating prejudice or fundamental unfairness lies with the party opposing the correction of ministerial errors.  *See generally* Shinhan Diamond, 34 CIT at ____, 2010 WL 850169 at * 5; Diamond Sawblades, 34 CIT at ____, 2010 WL 850158 at * 5.

The Domestic Producers can make no such showing in this case.  As detailed below, there is no merit to the Domestic Producers' reliance on the doctrine of exhaustion of administrative remedies.  The Domestic Producers' criticism of Commerce's policy of issuing liquidation instructions within 15 days after publication of the final results also does not advance their case.  And the Domestic Producers fail to explain why publication of amended final results in this case, together with the resulting amendments (if any) to their complaint, will consume time significantly in excess of that contemplated by Congress when it enacted the statutory provision authorizing Commerce's administrative correction of ministerial errors such as those at issue here.

Even more fundamentally, the Domestic Producers were afforded the opportunity to comment on all allegations of ministerial error that were submitted by the Chinese

producers/exporters and considered by Commerce, in accordance with the statute and regulations – an opportunity that the Domestic Producers took.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011).  Further, the Domestic Producers will have the right to review the amended final results, as corrected, and to file an amended complaint, should they so choose.  *See*, *e.g.*, Diamond Sawblades, 34 CIT at ____, 2010 WL 850158 at * 7 (expressly granting plaintiff leave to file amended summons and amended complaint); NTN Corp., 32 CIT at ____, ____, 587 F. Supp. 2d at 1316-17, 1319 (rejecting claim that allowing Commerce to correct ministerial error will be procedurally unfair, noting that plaintiffs "may contest the amended final determination . . . and thereby raise any new issues related to [Commerce's] new calculation"; expressly granting plaintiffs leave to file amended summons and amended complaint); *see also* Federal-Mogul Corp., 16 CIT at 982, 809 F. Supp. at 112 (explaining that "[a]llowing all parties . . . freedom to file amended pleadings to take into account any changes made in the Final Results will prevent prejudice to any party").

Under these circumstances, granting Commerce leave to publish amended final results correcting the ministerial errors at issue plainly will not harm the Domestic Producers.

## 1.  The Domestic Producers' Interest in "Finality"

The Domestic Producers assert broadly that permitting Commerce to make the proposed corrections and publish amended final results will infringe upon the Domestic Producers' "strong interest in the finality of [Commerce's] results for purposes of challenging such results on appeal." *See* Pls.' Opposition to Motion for Reconsideration at 7.  Specifically, the Domestic Producers argue that Fushun Jinly and the Fangda Group failed to exhaust their administrative remedies, because –

according to the Domestic Producers – the ministerial errors at issue here could have been raised in the case briefs that Fushun Jinly and the Fangda Group filed with Commerce following issuance of the Preliminary Results, but were not.  *See id.*[12]

This is a classic case of the proverbial "pot calling the kettle black."  In the September 23, 2011 comments that the Domestic Producers filed with Commerce concerning the Chinese producers/exporters' allegations of ministerial error, the Domestic Producers argued "exhaustion" as to only one of the four ministerial errors that Commerce here seeks to correct – specifically, the Fangda Group's allegation that Commerce inadvertently performed certain cost calculations on a metric ton basis even though the Fangda Group reported its packing factors of production in units of kilograms.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011) at 2-3 (asserting that "[e]ven though the same issue[] existed with the preliminary results, the Fangda Group remained silent on the[] issue[] in [its] case brief").

The Domestic Producers plainly did not raise an "exhaustion" objection – or, for that matter, any other objection – as to the allegations that Commerce unintentionally miscalculated Fushun Jinly's SG&A and profit ratios.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011) at 3-4 (as to Fushun Jinly's ministerial error allegations, challenging only the allegation that

---

[12]The Domestic Producers point to 19 C.F.R. § 351.224(c)(1), which provides, in relevant part:

> A party to the proceeding to whom [Commerce] has disclosed calculations performed in connection with a preliminary determination may submit comments concerning a significant ministerial error in such calculations. . . . Comments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief.

19 C.F.R. § 351.224(c)(1).

Commerce's application of partial adverse facts available to Toller # 2 (Liaoning Fuan) was based

on a misidentification of that toller).  Similarly, the Domestic Producers raised no objection at all

to Muzi's allegation that Commerce misspelled the company's name in the margin chart in the Final

Results.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011) (silent as to Muzi's

allegation of ministerial error).  The Domestic Producers do not even acknowledge that their

comments filed with Commerce argued "exhaustion" as to only one of the four ministerial errors at

issue, much less cite any grounds (and supporting authority) for allowing them to belatedly raise that

objection as to other ministerial errors that Commerce here seeks to correct.  Certainly the Domestic

Producers provide no citations to the record in an effort to support their claim that other ministerial

errors at issue could and should have been identified and corrected before the Final Results.

There is therefore no need to further consider the Domestic Producers' "exhaustion"

argument, except as to the Fangda Group's allegation that Commerce inadvertently performed

packing material cost calculations on a metric ton basis, rather than a per kilogram basis.[13]  As to

that allegation, the Court of Appeals has squarely held that, a party's failure to exhaust its

administrative remedies notwithstanding, Commerce "has discretion to fix . . . [a 'late-identified'

ministerial] error," although it is not required to do so.  *See* Dorbest Ltd. v. United States, 604 F.3d

1363, 1376-77 (Fed. Cir. 2010).[14]  The Dorbest line of authority alone suffices to dispose of what

---

[13]*See generally* Hyundai Elecs., 29 CIT at 992-93, 395 F. Supp. 2d at 1242-43 (holding that, where comments that party submitted to Commerce did not object to correction of ministerial error, party will not be heard to take contrary position in court proceedings).

[14]*See also* Dorbest Ltd. v. United States, 32 CIT ____, ____, 547 F. Supp. 2d 1321, 1348 (2008), *aff'd in part*, *vacated in part*, *and rev'd in part*, 604 F.3d 1363 (Fed. Cir. 2010) (emphasizing that, where allegation of ministerial error is not timely raised, Commerce in its discretion nevertheless *may* – but is not *required* to – correct the error).

remains of the Domestic Producers' "exhaustion" argument.  But that argument fails for other reasons as well.

Thus, for example, the Court of Appeals has held that where – as here – a case must be remanded for other reasons (in this case, for the agency's correction of three other ministerial errors), it is not improper to also permit Commerce to correct a ministerial error that might have been raised earlier in the course of the administrative proceeding.  *See* CEMEX, 133 F.3d at 904; NTN Bearing Corp., 74 F.3d at 1208 (stating that it is particularly appropriate to permit Commerce to correct clerical errors where court is already remanding for other reasons); *see also* Federal-Mogul Corp. v. United States, 18 CIT 1168, 1172-74, 872 F. Supp. 1011, 1014-1016 (1994) (same).

Finally, the Court of Appeals has emphasized that, ultimately, the decision as to whether to require "exhaustion" in a situation such as this is a matter committed to the sound discretion of the court, because Congress did not "require" exhaustion in these circumstances.  *See* CEMEX, 133 F.3d at 905 (explaining that "the remand for correction of the error was not improper merely because the [party advocating for correction of the error] did not exhaust its administrative remedies"; emphasizing that Congress has not required exhaustion, such that whether to require exhaustion is entrusted to the trial court's discretion).

For all these reasons, there is no merit to the Domestic Producers' broadbrush objections invoking the doctrine of exhaustion of administrative remedies.  Even with respect to the one ministerial error at issue as to which the Domestic Producers timely preserved their objection, the doctrine of exhaustion does not bar the relief that the Government and the Chinese producers/exporters seek, particularly given the facts of this case.

2.  <u>The Domestic Producers' Concerns About Delay</u>

The Domestic Producers' remaining assertions of possible harm are variations on the theme of potential delay.  These claims are equally unavailing.

The Domestic Producers argue at some length, for example, that Commerce "could have and should have made the proposed corrections *in a timely fashion*," and that Commerce should not "be permitted to issue amended final results *belatedly*."   *See* Pls.' Opposition to Motion for Reconsideration at 5-6 (emphases added).  The Domestic Producers thus intimate that the timing of Commerce's actions in this case somehow violated the ministerial errors statute or regulation.  But any such implication would be false.  The actions of Commerce, Fushun Jinly, and the Fangda Group complied fully with the statute and regulation, in every respect.  *See generally* Def.-Ints.' Motion for Reconsideration at 7, 12 (detailing the "scrupulous[]" adherence in this case to the procedure and timetable set forth in the ministerial errors regulation).

As detailed above, Fushun Jinly, the Fangda Group, and Muzi each submitted timely comments to Commerce alleging various ministerial errors in the Final Results.  *See* Letter from Fushun Jinly to Commerce (Sept. 19, 2011); Letter from Fangda Group to Commerce (Sept. 19, 2011); Letter from Muzi to Commerce (Sept. 19, 2011).  Four days later, the Domestic Producers submitted comments to Commerce objecting to correction of some of the alleged errors.  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011).  Commerce was prevented from publishing amended final results correcting the ministerial errors at issue only by the filing of the Domestic Producers' lawsuit.  *See* Domestic Producers' Summons (Sept. 28, 2011); Domestic Producers' Complaint (Sept. 28, 2011).  Commerce then promptly sought leave of court to correct certain of the

ministerial errors and publish amended final results, as the agency has routinely done in other cases in the past. *See*, *e.g.*, American Signature, 598 F.3d at 820 (explaining that, after court actions were commenced challenging Final Results, "Commerce twice sought and received leave of the Court of International Trade to amend the Final Results to correct ministerial errors," leading to issuance of Second Amended Final Results).

Contrary to the Domestic Producers' suggestion, nothing about the procedure that Commerce followed in this case was in any way the least bit out of the ordinary. Consistent with Congress' intent, the statute and regulations clearly contemplate authorizing Commerce to correct the ministerial errors and publish amended final results in the circumstances of this case. *See generally* 19 U.S.C. § 1675(h); 19 C.F.R. § 351.224.

The real target of the Domestic Producers' ire is Commerce's policy of issuing liquidation instructions to Customs within 15 days after publication of the final results of administrative reviews, which generally makes it necessary for parties to file summonses and complaints and seek preliminary injunctions enjoining the liquidation of entries shortly after final results are published. *See* Pls.' Opposition to Motion for Reconsideration at 5-6. According to the Domestic Producers, "[b]ecause [Commerce's] own policy requires action of the parties that divests [the agency] of jurisdiction over the case only 15 days after publication of final results, [Commerce] should be prepared to correct any alleged ministerial errors in the final results" within the same 15-day timeframe. *See* Pls.' Opposition to Motion for Reconsideration at 5.

Distilled to its essence, the Domestic Producers' argument is thus a collateral attack on Commerce's standard 15-day policy. The Domestic Producers emphasize that the 15-day policy

came under criticism in NTN.  *See* Pls.' Opposition to Motion for Reconsideration at 5-6 (*discussing*

NTN Corp., 32 CIT at _____, 587 F. Supp. 2d at 1318).  But the Domestic Producers concede, as they

must, that – notwithstanding the language in the NTN decision discussing the effects of the 15-day

policy – the NTN court granted Commerce's motion for leave to publish amended final results

correcting ministerial errors in that case.  The Domestic Producers point to nothing that might

counsel a different outcome here.

　　　　Moreover, the Domestic Producers' argument takes no account of the fact that the true

parties in interest here are Fushun Jinly, the Fangda Group, and Muzi.  *See* Def.-Ints.' Motion for

Reconsideration at 12 (noting that the Chinese producers/exporters are "the parties who alleged the

presence of . . . ministerial errors in the final results and the parties who would be most directly

affected" absent the relief requested).  Any dissatisfaction with *Commerce's* 15-day policy cannot

be used to justify the continued imposition on the *Chinese producers/exporters* of erroneous, inflated

duty deposit rates that Commerce itself has repudiated.  *See* Def.-Ints.' Motion for Reconsideration

at 11, 12-13 (highlighting ongoing prejudice to Chinese producers/exporters if the "imposition of

*manifestly incorrect* antidumping duty deposit rates" is allowed to continue) (emphasis added); *see*

*generally* NTN Bearing Corp., 74 F.3d at 1208 (*quoting* Rhone Poulenc, Inc. v. United States, 899

F.2d 1185, 1191 (Fed. Cir. 1990), underscoring Commerce's duty "to determine dumping margins

'as accurately as possible'"; noting that "the antidumping laws are remedial, not punitive"; and

emphasizing that "[t]he affected U.S. industry is not entitled to [an excessive] remedy").[15]

_____

　　　　[15]It is no answer to say – as the Domestic Producers do here – that all excess cash deposits
will be refunded at the end of the judicial proceedings.  *See* Pls.' Opposition to Motion for
Reconsideration at 7 (arguing that "the cash deposit rates are only deposits and do not represent a
final duty assessment rate").  Similarly, the courts have made short work of any suggestion that

Finally, the logic of the Domestic Producers' emphasis on the 15-day policy is entirely unclear. The Domestic Producers' implication is that permitting Commerce to publish amended final results correcting ministerial errors *now* will cause the Domestic Producers some harm that they would have been spared if Commerce had published the amended final results *before* the Domestic Producers' lawsuit was commenced. However, apart from any potential implications for the litigation schedule (which are discussed immediately below), the Domestic Producers have failed to identify any such harm.

With respect to the litigation schedule, the Domestic Producers contend that "allowing [Commerce] to publish amended final results at this time would cause delay in this case because [the Domestic Producers] will have to review [Commerce's] amended final results, and then amend their complaint to include challenges to those revised results." *See* Pls.' Opposition to Motion for Reconsideration at 8. But empowering Commerce to administratively correct ministerial errors and to publish amended final results was the very purpose of the statutory and regulatory scheme enacted to fulfill Congress' intent; and the processes of correcting such errors and publishing amended final results necessarily consume some amount of time. The Domestic Producers have failed to explain how (if at all) the time consumed by those processes in this case will be greater than that which was contemplated by Congress. Moreover, to the extent that the Domestic Producers focus on the time

---

correction of ministerial errors is unnecessary because the effect of such errors may be offset by changes to the dumping margin that may ultimately result from the adjudication of other issues on the merits. *See*, *e.g.*, Shinhan Diamond, 34 CIT at ____, 2010 WL 850169 at * 3, 5 (rejecting argument that "allowing correction of . . . errors would not increase the accuracy of the dumping margins, but only distort them further," as well as arguments that "the merits of the case will reveal that the cash deposit rate is 'already lower than it should be' and that even if it is determined otherwise, any excess cash deposits would ultimately be returned"); Diamond Sawblades, 34 CIT at ____, 2010 WL 850158 at * 3, 5 (same).

required to "review [Commerce's] amended final results, and then amend their complaint to include challenges to those revised results," it is worth noting that the time required for that purpose in the instant case is a matter entirely within the Domestic Producers' control, and, indeed, is a right that they may waive, should they choose to do so.[16]

The Domestic Producers make only one argument concerning delay that is not inherent in the statutory and regulatory framework for the correction of ministerial errors.  The Domestic Producers contend that Fushun Jinly and the Fangda Group should have filed their Motion for Reconsideration "when they were granted intervention in the case – over a month before they agreed to the current briefing schedule."  *See* Pls.' Opposition to Motion for Reconsideration at 8.  The Domestic Producers argue that permitting Commerce to publish amended final results correcting ministerial errors now will require the parties "to abandon the current expedited briefing schedule and adopt a new one, with deadlines much farther out."  *Id.*

The need to amend the scheduling order in this matter might well have been obviated entirely, however, if the Domestic Producers had been more forthcoming in their opposition to the

---

[16]The Domestic Producers claim that permitting Commerce to issue amended final results correcting the ministerial errors will protract this proceeding by "inject[ing] new issues for litigation into this case."  *See* Pls.' Opposition to Motion for Reconsideration at 8; *see also id.* at 9 (asserting that "protracted litigation . . . will inevitably result" if the Motion for Reconsideration is granted).  The Domestic Producers assert that they "oppose many of the alleged errors that were identified by [Fushun Jinly and the Fangda Group]," such that permitting correction of the errors will "include several new and major issues to be litigated."  *See id.* at 8.  As discussed above, however, Domestic Producers in fact objected to only *one* of the four errors that Commerce proposes to correct – *i.e.*, the inadvertent application of a freight surrogate value measured in metric tons to the Fangda Group's packing factors of production (which were measured in kilograms).  *See* Letter from Domestic Producers to Commerce (Sept. 23, 2011) at 2-3.  It is therefore difficult to conceive how granting the Motion for Reconsideration could possibly result in an amended complaint that will include "several new and major issues."

Government's original Motion for Correction of Ministerial Errors.[17]  In particular, if the Domestic

Producers' response to the Government's original Motion for Correction of Ministerial Errors had

candidly conceded that the September 23, 2011 comments that the Domestic Producers filed with

Commerce had opposed only one of the four corrections that the Government's motion proposed

to make, the court's October 26, 2011 order almost certainly would have granted the Government's

motion – at least as to the correction of the three errors that the Domestic Producers' September 23,

2011 comments did not contest, and quite likely as to all four of the ministerial errors at issue.  *See*

CEMEX, 133 F.3d at 904; NTN Bearing Corp., 74 F.3d at 1208 (stating that it is particularly

appropriate to permit Commerce to correct clerical errors where court is already remanding for other

reasons); *see also* Federal-Mogul Corp., 18 CIT at 1172-74, 872 F. Supp. at 1014-1016 (same).

---

[17]The Domestic Producers have continued to be less than completely forthcoming.  For example, as detailed herein, the Domestic Producers' most recent brief never acknowledges that the Domestic Producers' September 23, 2011 comments to Commerce objected to only one of the corrections that Commerce here seeks to make.  *See* Pls.' Opposition to Motion for Reconsideration, *passim*.  Instead, the Domestic Producers flatly assert that their September 23, 2011 comments "request[ed] that [Commerce] reject [the Chinese producers/exporters'] proposal to amend the final results."  *See id*. at 2.  Elsewhere, the Domestic Producers cast their arguments in this forum as a recitation and repetition of what they said in their opposition to the Government's Motion for Correction of Ministerial Errors – with no hint that those objections were not raised in their September 23, 2011 comments submitted to Commerce.  *See*, *e.g.*, *id*. at 7 (stating that Domestic Producers "argued in their opposition to the [Government's] motion for leave to publish amended final results that [Fushun Jinly and the Fangda Group] should have identified and raised the alleged errors . . . in their case brief[s] before the final results were issued").  Moreover, as discussed elsewhere, at least one statement in the Domestic Producers' most recent brief is outright false.  *See id*. at 9 (stating that Domestic Producers "have never opposed correction to the spelling of . . . Muzi's name"); *but see id*. at 10 (arguing that the Motion for Reconsideration – which, *inter alia*, seeks to permit Commerce to correct the spelling of Muzi's name – should be denied "in its entirety"); *see also* Pls.' Opposition to Def.'s Motion for Correction of Ministerial Errors at 7 (same).  The effect, if not the intent, of such advocacy is to mislead.

It follows that, if the court's October 26, 2011 order had granted the Government's Motion for Correction of Ministerial Errors, the briefing schedule in this matter would have been established *after* publication of the amended final results – and there would be no need to amend the briefing schedule now.  In this sense, to the extent that any unusual delay in this case may flow from the delay in granting Commerce leave to publish amended final results, the Domestic Producers have only their own lack of candor to blame.[18]

The Domestic Producers' final argument is that "the delay that amendment to the final results would cause is unnecessary because [Commerce] can and should make its proposed corrections in the process of judicial review, allowing the parties to review a draft remand."  *See* Pls.' Opposition to Motion for Reconsideration at 8-9.  This claim amounts to nothing less than a full frontal assault on Congress' statutory and regulatory framework enacted for the precise purpose of avoiding the use of the judicial review process to correct what are purely mere "ministerial errors."  *See* H.R. Rep. No. 100-40, Pt. 1, at 144 (1987) (explaining that "ministerial errors" statute is intended to allow Commerce to administratively correct "essentially unintended errors," in order to avoid "expensive litigation that unnecessarily burdens the court system").  Accordingly, like the Domestic Producers' other claims, this argument too must be rejected.

## C.  The Prejudice to Fushun Jinly, the Fangda Group, and Muzi

As set forth immediately above, permitting Commerce to publish amended final results

---

[18]It bears noting that Fushun Jinly and the Fangda Group have offered no explanation as to why they did not file their Motion for Reconsideration earlier in this action.  Under other circumstances, a failure to seek reconsideration at the earliest reasonable opportunity could be fatal to such a motion, particularly if another party suffered prejudice as a result of the delay.

correcting the specified ministerial errors will result in no cognizable prejudice or harm to the Domestic Producers.  On the other hand, as outlined below, refusing leave to publish the amended final results would perpetuate ongoing prejudice to Fushun Jinly and the Fangda Group, through the end of the judicial review process.

Because Fushun Jinly and the Fangda Group have included in their complaint counts challenging the three ministerial errors at issue related to their dumping margins (*see* Fushun Jinly/Fangda Group Complaint (Nov. 9, 2011), Counts 2-3), it is true that – as the Domestic Producers suggest – those errors conceivably could be litigated in this action and the errors ultimately corrected through the judicial process.  Under such a scenario, however, the corrected duty deposit rates would not go into effect until judicial review was concluded.  That outcome would directly contravene Congress' intent in enacting the ministerial errors statute, and, more concretely, would (as a practical matter) continue to subject imports of Fushun Jinly and Fangda Group merchandise to the excessive duty deposit rates that are reflected in the existing Final Results – duty deposit rates that are artificially and mistakenly inflated by the ministerial errors that Commerce seeks to correct.

Prompt correction of the ministerial errors, via the administrative mechanism designed for that purpose by Congress, will result in a meaningful reduction in the duty deposit rates applicable to  Fushun Jinly and the Fangda Group.  Specifically, correction of the miscalculated SG&A and profit ratios applied to Fushun Jinly is projected to reduce Fushun Jinly's rate from the current 56.63% to approximately 39%.  *See* Def.-Ints.' Motion for Reconsideration at 11.[19]  Similarly,

---

[19]Absent Court authorization, Fushun Jinly's duty deposit rate would not be reduced until the judicial review process is complete – even though the September 23, 2011 comments that the

correcting the packing material cost calculations for the Fangda Group by using consistent units of

measurement (whether kilograms or metric tons) is expected to reduce the Fangda Group's rate from

the current 2.75% to approximately 1.5%. *See id.* As the Fangda Group notes, the effect of that

error has been to "overstat[e] the freight component of the surrogate value of [the relevant] inputs

*by a factor of 1,000*." *See id.* at 7-8 (emphasis added). By any measure, these corrections are

significant.

Finally, one of the four ministerial errors that Commerce proposes to correct – *i.e.*, the

spelling of Muzi's name in the Final Results – could never be corrected through the process of

judicial review, because Muzi did not bring an action in this court appealing the misspelling of the

company's name (or challenging any other aspect of the Final Results). The statutory process for

the administrative correction of ministerial errors is therefore the sole avenue by which Muzi can

be correctly identified in published final results.[20] *See generally* NTN Corp., 32 CIT at ____, 587

_____

Domestic Producers filed with Commerce expressed no objection to Commerce's correction of
Fushun Jinly's SG&A and profit ratios. *See* Letter from Domestic Producers (Sept. 23, 2011)
(expressing no objection to correction of Fushun Jinly's SG&A and profit ratios).

[20]The Domestic Producers now state that they have never opposed Commerce's correction
of the spelling of Muzi's name. *See* Pls.' Opposition to Motion for Reconsideration at 9. As
explained above, however, the Government's original Motion for Correction of Ministerial Errors
sought leave to correct the same four ministerial errors that are the subject of the motion here at bar
– specifically, the misspelling of Muzi's name and the three other errors discussed herein. *See*
Def.'s Motion for Correction of Ministerial Errors at 2. And, as discussed above, the Domestic
Producers flatly opposed the Government's motion. *See* Pls.' Opposition to Def.'s Motion for
Correction of Ministerial Errors at 7 (urging that the Government's Motion for Correction of
Ministerial Errors be denied "in its entirety").

Moreover, the Domestic Producers have failed to explain how Commerce would be expected
to correct the spelling of Muzi's name, other than by granting the agency leave to publish amended
final results – a course that the Domestic Producers have continued to oppose. *See* Pls.' Opposition
to Motion for Reconsideration at 10 (urging that the pending Motion for Reconsideration be denied

F. Supp. 2d at 1316 (noting that correction of error "will affect the margins and deposit rates of producers/exporters who are not parties" to litigation challenging final results).

In short, the continued application of patently inaccurate duty deposit rates would work a substantial hardship on the Chinese producers/exporters and confer a windfall on the Domestic Producers.  No party has the right to opportunistically exploit ministerial errors in Commerce's calculations to the detriment of other parties.  That is precisely the type of administrative "evil" that Congress sought to prevent by authorizing the extra-judicial correction of ministerial errors in final results via the administrative process that Commerce properly seeks to use here.  *See generally*, *e.g.*, NTN Bearing Corp., 74 F.3d at 1208 (holding that Commerce abused its discretion in refusing to correct ministerial error, and noting, *inter alia*, that "[t]he affected U.S. industry is not entitled to [an excessive] remedy").

### D.  The Interest of Judicial Economy

As outlined above, permitting Commerce to publish amended final results correcting the ministerial errors at issue here will not result in any cognizable prejudice or fundamental unfairness to the Domestic Producers.  Indeed, quite to the contrary, permitting Commerce to issue amended final results will prevent the perpetuation of prejudice and unfairness to the Chinese producers/exporters, and, moreover, will promote judicial economy, will conserve the resources of the parties and the Court, will ensure that the agency determination that is subject to judicial review in this proceeding is that which Commerce intended, and thus will be consonant with Congress' express intent as reflected in the statutory provision governing the correction of ministerial errors.

"in its entirety").

*See generally* Def.-Ints.' Motion for Reconsideration at 12; Def.'s Renewed Motion for Correction of Ministerial Errors at 5, 9-10.

As section I above explains, Congress' rationale underlying the statutory and regulatory scheme designed specifically to permit Commerce to correct ministerial errors is Congress' desire to obviate the need for "expensive litigation that unnecessarily burdens the court system." *See* H.R. Rep. No. 100-40, Pt. 1, at 144 (1987). "The ministerial error provisions in the statute signify the importance Congress attached to Commerce's correcting ministerial errors promptly after issuance of final determinations in antidumping proceedings." *See* NTN Corp., 32 CIT at ____, 587 F. Supp. 2d at 1315.

Congress' establishment of this special mechanism for the administrative correction of ministerial errors indicates "[a] legislative preference for determinations that are factually correct." Koyo Seiko Co. v. United States, 14 CIT 680, 683, 746 F. Supp. 1108, 1111 (1990). That preference reflects the fact that "fair and accurate determinations are fundamental to the proper administration of our dumping laws." *See id.*, 14 CIT at 682, 746 F. Supp. at 1110; *see also* NTN Bearing Corp., 74 F.3d at 1208 (stressing importance of accuracy in antidumping determinations); Shandong Huarong, 25 CIT at 848, 159 F. Supp. 2d at 727 (holding that restricting Commerce's power to correct ministerial errors would undermine the agency's "underlying obligation to calculate the most accurate dumping margins possible"). Thus, courts have, with only the rarest exceptions, "'uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination.'" *See* Diamond Sawblades, 34 CIT at ____, 2010 WL 850158 at * 3 (*quoting* Koyo

Seiko Co., 14 CIT at 682, 746 F. Supp. at 1110).[21]

In granting a similar motion for leave to publish amended final results, the court has previously pointed out that "time and effort will be saved if the subject of the judicial challenges . . . before this Court are what [Commerce] considers to be the true and accurate final results from the . . . administrative review[]." *See* Federal-Mogul Corp., 16 CIT at 982, 809 F. Supp. at 112. The court further observed that "allowing the correction[] [of the ministerial errors in question] may eliminate many of the issues raised in . . . the complaints which have been filed . . . challenging the[] Final Results." *See id.*

In the instant case, Commerce's publication of amended final results will enhance the accuracy of the agency's determination, as well as promote the interests of judicial economy and conserve the resources of both the court and the parties. Specifically, two of the six counts in the complaint filed by Fushun Jinly and the Fangda Group relate to the ministerial errors which Commerce seeks to correct. *See* Fushun Jinly/Fangda Group Complaint (Nov. 9, 2011), Counts 2-3. According to Fushun Jinly and the Fangda Group, "[those] two causes of action in [their] complaint will be eliminated" if Commerce is granted leave to publish amended final results. *See* Def.-Ints.' Motion for Reconsideration at 12. In short, permitting Commerce to address the subject errors now, through the publication of amended final results, can be expected to obviate a number of the issues

---

[21]*See generally*, *e.g.*, Shinhan Diamond, 34 CIT at ____, 2010 WL 850169 at * 1-5; NTN Corp., 32 CIT at ____, 587 F. Supp. 2d at 1315-18; Hyundai Elecs., 29 CIT at 992-93, 395 F. Supp. 2d at 1242-43; Peer Bearing Co. v. United States, 23 CIT 454, 456, 57 F. Supp. 2d 1200, 1202-03 (1999); Aramide, 19 CIT at 1102-03, 901 F. Supp. at 360-62; Koyo Seiko Co. v. United States, 19 CIT 873, 882, 893 F. Supp. 52, 59 (1995), *aff'd*, 95 F.3d 1094 (Fed. Cir. 1996); Federal-Mogul Corp., 18 CIT at 1171-76, 872 F. Supp. at 1014-17; Federal-Mogul Corp., 16 CIT at 980-83, 809 F. Supp. at 111-12; Asociacion Colombiana de Exportadores de Flores, 13 CIT 13, 28, 704 F. Supp. 1114, 1126 (1989).

currently before the Court, streamlining the litigation while reducing the costs and other burdens

borne by the parties and the Court.  The interests of judicial economy therefore weigh in favor of

granting the requested relief.

### III.  <u>Conclusion</u>

For all the reasons set forth above, the Motion for Reconsideration filed by Fushun Jinly and

the Fangda Group, as well as the Government's Renewed Motion for Correction of Ministerial

Errors, must be granted, and Commerce granted leave to publish amended final results correcting

the ministerial errors discussed herein.

An order will enter accordingly.

                                                    /s/ Delissa A. Ridgway
                                        _____
                                                    Delissa A. Ridgway
                                                            Judge

Dated:  February 22, 2012
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| SGL CARBON LLC and<br>SUPERIOR GRAPHITE CO., | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| *Defendant*, | : | |
| | : | |
| and | : | |
| | : | |
| FUSHUN JINLY PETROCHEMICAL<br>CARBON CO., LTD., ET AL., | : | |
| | : | |
| *Defendant-Intervenors.* | : | Consol. Court No. 11-00389 |
| FUSHUN JINLY PETROCHEMICAL<br>CARBON CO., LTD., ET AL., | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| *Defendant*, | : | |
| | : | |
| and | : | |
| | : | |
| SGL CARBON LLC and<br>SUPERIOR GRAPHITE CO., | : | |
| | : | |
| *Defendant-Intervenors.* | : | |

## <u>ORDER</u>

Upon consideration of Defendant Intervenors' Motion for Reconsideration of the Court's Order Dated October 26, 2011 Denying Defendant's Motion for Leave to Publish Amended Final Results Correcting Ministerial Errors, Defendant's Response to Defendant-Intervenors' Motion for Reconsideration, and Plaintiffs' Opposition to Defendant-Intervenors' Motion for Reconsideration

of the Court's Order Denying Defendant Leave to Publish Amended Final Results Correcting A Ministerial Error, it is hereby

ORDERED that Defendant-Intervenors' Motion for Reconsideration is granted; and it is further

ORDERED that the U.S. Department of Commerce ("Commerce") is authorized to publish in the Federal Register, no later than March 16, 2012, amended final results correcting the specified ministerial errors in the calculation of the final antidumping margins in Small Diameter Graphite Electrodes from the People's Republic of China:  Final Results of the First Administrative Review of the Antidumping Duty Order and Final Rescission of the Administrative Review, in Part, 76 Fed. Reg. 56,397 (Sept. 13, 2011) ("Final Results"); and it is further

ORDERED that, no later than March 23, 2012, Commerce shall file all documents required to supplement the administrative record with respect to the development, issuance, and publication of any amended final results; and it is further

ORDERED that all parties, pursuant to USCIT Rule 3(e), are granted leave to file amended summonses, and, pursuant to USCIT Rule 15(a), amended complaints, no later than April 13, 2012, to reflect any changes between the Final Results and any amended final results published by Commerce in accordance with this Order; and it is further

ORDERED that the injunction entered by Order dated September 28, 2011 shall remain in effect according to its terms.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway, Judge

Dated:  February 22, 2012
     New York, New York